United States District Court
Southern District of Texas
FILED

NOV 03 2000

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
|     Respondent | § | |
| | § | |
| vs. | § | C.R. NO. B-97-390 |
| | § | |
| ROSA MERAZ. | § | |
|     Petitioner | § | |
| (C.A. B-00-143) | § | |

RESPONSE AND MOTION TO DISMISS
MERAZ'S MOTION FOR RELIEF
UNDER 28 U.S.C. § 2255

TO THE HONORABLE JUDGE OF SAID COURT:

The United States of America, "the government", files this response and motion to dismiss Meraz's motion for relief under 28 U.S.C. § 2255. In support thereof the government would show the court the following:

I.

JURISDICTION

On October 28, 1997, the Grand Jury for the United States District Court for the Southern District of Texas, Brownsville Division, filed an indictment, Criminal Case No. B-97-390, in which Meraz, Jose Abraham Bravo, Martin Jaime Hernandez Arias, Daniel Eduardo Peinado Canales, and Walter Hernandez Samaniego were charged with the offenses of conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (DOC 1). On November 5, 1997, Meraz, *et al.*, entered pleas of not guilty (DOC 3).

On December 3, 1997, Meraz reached an accord with the government and entered a plea of guilty to count 1 of the indictment, conspiracy to possess with intent to distribute cocaine (DOC 41, 42). The district court accepted Meraz's plea, found her guilty, ordered the preparation of a presentence investigation report, and set the case for sentencing (DOC 43).

Meraz's sentence was imposed on February 12, 1998 (DOC 68). Meraz's total offense level was determined to be 31 and her criminal history score placed her in Criminal History Category I. The applicable guideline range was 108 to 135 months. The district judge granted the government's motion for a downward departure and ordered Meraz to serve a 72 month term of confinement that was to be followed by a five-year term of supervised release[1]. Meraz was ordered to pay the mandatory assessment of $100.

Meraz appealed to the United States Court of Appeals for the Fifth Circuit (DOC 101). On June 16, 1999, the court of appeals issued an unpublished opinion in CCA No. 98-40659 affirming the judgment of conviction and sentence (DOC 134). Meraz did not pursue a petition for a writ of certiorari to the Supreme Court of the United States. Consequently, Meraz's judgment of conviction and sentence became final on September 14, 1999. *United States v. Thomas*, 203 F.3d 350 (5th Cir. 2000).

---

[1] A 72-month term of imprisonment falls within the range for an offense level 26 and a criminal history category I (63-78 months).

2

Meraz timely invoked this court's jurisdiction under 28 U.S.C. § 2255 on September 11, 2000.

## II.

### STATEMENT OF FACTS

On December 3, 1997, Meraz and her co-conspirator Martin Jaime Hernandez Arias entered guilty pleas to the charge of conspiracy to possess with intent to distribute in excess of five kilograms of cocaine (DOC 126 - 2). In consideration for the guilty pleas, the government agreed to dismiss count 2 of the indictment and to recommend a three-level adjustment for acceptance of responsibility. The government agreed to recommend the imposition of a sentence at the low end of the applicable guideline range and agreed to file a motion for a downward departure in the event that Meraz and Arias rendered substantial assistance by debriefing and testifying truthfully (DOC 126 - 7). Meraz acknowledged that the prosecuting attorney had accurately summarized the terms of the plea agreement (DOC 126 - 9).

In accordance with FED.R.CRIM.P. 11(f), the government offered the following factual basis for the plea:

> If called upon to do so Your Honor, the government would be able to prove that in late September 1997, an undercover agent from the Imperial Narcotic Task Force in the State of California began negotiating with the defendant Rosa Meraz and Walter Hernandez-Samaniego to purchase a large amount of cocaine through their source of supply in Guadalajara, Mexico.
>
> Late in September defendant Walter Samaniego went to Guadalajara with defendant Rosa Meraz where he meets with

3

>   defendant Martin Jaime Hernandez Arias, Samaniego's cousin, and Defendant Daniel Eduardo Peinado-Canales, where negotiations are made with unknown drug suppliers to have a hundred kilos of coke taken to Reynosa, Mexico.
>
>   On or about October 7, 1997, an undercover agent from the DEA Task Force in Cameron County begin (sic) negotiating the purchase and delivery of a hundred kilograms of cocaine and speaks to defendant Rosa Meraz and defendant Martin Arias in McAllen and Brownsville, Texas, about the delivery of the cocaine.
>
>   On or about October 10th of 1997 approximately 98 kilos of coke are delivered to the undercover agent at the Oyster Bar parking lot in McAllen, Texas, where the defendants Arias and Meraz are present during the transaction.

(DOC 126 - 15-16). Meraz acknowledged her involvement in the offense as described by the government (DOC 126 - 17-18). The district court accepted the guilty pleas and found Meraz and Arias guilty (DOC 126 - 18).

Meraz was sentenced on February 12, 1998: The district court departed from the applicable guideline range and ordered Meraz to serve a 72 month term of confinement that was to be followed by a five-year term of supervised release. The court pointedly observed that Meraz "was going to be deported" and advised her that an unlawful return to the United States could land her back in jail for up to another twenty-five years (DOC 130 - 3).

III.

GROUNDS FOR RELIEF

In her motion for relief under 28 U.S.C. § 2255, Meraz advances the following issues:

4

(1) Whether Meraz was denied her right to the effective assistance of counsel at sentencing in light of counsel's failure to adequately research and apply the guidelines applicable to the determination of Meraz's sentence;

(2) Whether Meraz is entitled to an offense level adjustment by virtue of her role in the offense; and,

(3) Whether Merzaz is entitled to a downward departure because her responsibilities for her children take the case out of the heartland of the applicable sentencing guidelines.

IV.

RESPONSE AND MOTION TO DISMISS

A. <u>Ineffective assistance of counsel: principles applied to the instant controversy</u>.

There are two components to any ineffective assistance of counsel claim: (1) deficient performance and (2) prejudice. A criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, _ U.S. _, 113 S.Ct. 838, 842 (1993)(quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984)). In *Fretwell*, the Court observed:

> [An] analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.

5

_ U.S. _, 113 S.Ct. at 842-43. The "prejudice" prong of the *Strickland* test focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Id _ U.S. _, 113 S.Ct. at 844.

To prevail on her claim, Meraz must identify the acts or omissions that are outside the wide range of professionally competent assistance and then demonstrate that but for counsel's unprofessional errors the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. A reviewing court must endeavor to eliminate the distorting effects of hindsight and evaluate the facts from counsel's perspective at the time of trial. To this end the court will indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. Id.

The burden falls on the accused to prove a violation of constitutional standards. The focus is on the attorney's impact on the adversarial process; the constitutional standards may be met irrespective of an accused's evaluation. *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039 (1984).

In *Armstead v. Scott*, 37 F.3d 202, 207 (5th Cir. 1994). The court noted that *Lockhart v. Fretwell* requires a rather appreciable

6

showing of prejudice.  Id.  To show prejudice in the sentencing context, Meraz must show "a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been **significantly** less harsh."  *United States v. Segler*, 37 F.3d 1131, 1136 (5th Cir. 1994)(citing *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993)).  Under this standard, the court must consider such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances.  *Id*.

Meraz contends her right to the effective assistance of counsel was abrogated as a result of counsel's failure to adequately research the Sentencing Guidelines applicable to her case.  Without specifying precisely what guidelines would have justified a downward adjustment in her offense level determination or what circumstances counsel could have advanced to justify a downward departure, Meraz simply contends the failure to raise these issues at trial or on appeal constitutes deficient performance and is prejudicial per se.  This contention is undermined by the fact that the district court departed from the applicable guideline range under the authority of USSG § 5K1.1 when it imposed Meraz's sentence.  Since Meraz received a sentence below the established guideline range, counsel's failure to secure an

7

adjustment grounded on her role in the offense as well as a departure grounded on the hardships her conviction wrought on her family, cannot be deemed prejudicial. Moreover, as will be shown below, counsel's failure to secure this type of an adjustment and departure does not constitute deficient performance.

B.  <u>Guideline applications are not cognizable in § 2255 proceedings; Meraz not entitled to the adjustment</u>.

Under 28 U.S.C. § 2255, a petitioner may move the court to vacate, set aside, or correct the sentence on the basis that

> [T]he sentence was imposed in violation of the constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . .

*United States v. Faubion*, 19 F.3d 226, 232 (5th Cir. 1994). The *Faubion* court observed that the phrase "otherwise subject to collateral attack" limits relief under § 2255 to "(1) errors of constitutional magnitude and (2) other injuries that could not have been raised on direct appeal and, if left unaddressed, would result in a miscarriage of justice." 19 F.3d at 233 (citing *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992); *United States v. Weintraub*, 871 F.2d 1257, 1266 (5th Cir. 1989); *United States v. Smith*, 844 F.2d 203, 205-06 (5th Cir.1988)). A challenge to a sentencing judge's technical application of the sentencing guidelines may not be raised in a § 2255 proceeding. Such questions are capable of being raised on appeal and do not

8

implicate any constitutional issues. *Id.* (citing *Vaughn*, 955 F.2d at 368). *See also*, *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).

Meraz's second and third grounds for relief are little more than a challenge to the court's application of the Sentencing Guidelines. In her second ground for relief, Meraz advances the proposition that she should have received an adjustment for her role in the offense under the authority of USSG § 3B1.2. To the extent that this is a challenge to the court's application of the guidelines, it is not cognizable in the instant proceeding. To the extent that it is grounded on counsel's failure to advance this issue during the sentencing hearing or on direct appeal, it is without merit because she has not shown that she is entitled to the adjustment. A defendant cannot be considered a minor participant unless she is substantially less culpable than the average participant. *United States v. Lokey*, 945 F.2d 825, 840 (5th Cir. 1991). USSG § 3B1.2 comment. (n.3). Where the evidence shows a defendant is an average participant, the district court does not err in refusing to award a reduction. *United States v. Devine*, 934 F.2d 1325, 1340 (5th Cir. 1991). Because most offenses are committed by participants of roughly equal culpability, this Court has observed that § 3B1.2 will be used infrequently. *United States v. Allibhai*, 939 F.2d 244, 254 (5th Cir. 1991). The finding that a defendant is or is not a "minor participant" is a finding of fact

9

subject to the clearly erroneous standard of review. A finding is clearly erroneous only when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *United States v. Rogers*, 906 F.2d 189, 190 (5th Cir. 1990).

Meraz is not significantly less culpable then her fellow conspirators. In addition to the recommendations of the pre-sentence investigation report (PSR ¶ 17), the court heard Meraz's testimony in the trial of her co-conspirator Peinado Canales. Cumulatively, this evidence supports the proposition that Meraz was an average participant in the offense. Accordingly, counsel's failure to advance an objection grounded on Meraz's role in he offense is not unreasonable. Relief under this ground should be summarily denied.

C. <u>Children - hardships - departures - the risks of narcotics trafficking</u>.

As a matter of policy, family ties and responsibilities are generally not relevant in determining whether a sentence is outside the applicable sentencing range. USSG § 5H1.6. Meraz's assertion that she is entitled to a downward departure because her two children are currently in the custody of her elderly grandmother is not cognizable under 28 U.S.C. § 2255 - it is simply a challenge to the district court's application of the Sentencing Guidelines. Moreover, this circumstance does not justify a finding that her case is exceptional and thus, outside of the heartland of § 5H1.6.

10

*United States v. Winters*, 176 F.3d 478, 484 (5th Cir. 1999)(citing *United States v. Rybicki*, 96 F.3d 754, 758 (4th Cir. 1996)). Indeed, Meraz's family situation following her conviction is pretty much the norm. *United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998)(Affirming denial of a motion to depart grounded on need of two young children for their mother noting "the mere disintegration of existing family relationships is insufficient to warrant a departure as that is to be expected when a family member engages in criminal activity that results in a period of incarceration")(quoting *United States v. Canoy*, 37 F.3d 893, 907 (7th Cir. 1994); *United States v. Bahena*, 223 F.3d 797, 810 (7th Cir. 2000). Relief on this ground should be summarily denied.

D. <u>Need for an evidentiary hearing</u>.

A Section 2255 Motion requires a hearing unless the files, the motion, and the record of the case conclusively show that no relief is appropriate. 28 U.S.C. § 2255 (foll.), Rule 8(a). *United States v. Santora*, 711 F.2d 41 (5th Cir. 1983). The need for an evidentiary hearing depends upon an assessment of the record. If the district court cannot resolve the allegations without examining evidence beyond the record, it must hold a hearing. If the record is adequate to fairly dispose of the allegations, the court need inquire no further. *United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990).

11

Although the allegations of a *pro se* complaint are held to a less stringent standard than the formal pleading drafted by lawyers, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief, the cause will be dismissed. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594 (1972). The issues raised by Meraz can be resolved with resort to the record. The instant motion does not merit a hearing; relief should be summarily denied and the instant motion dismissed.

The government prays that the court enter an order dismissing Civil Case No. B-00-143.

                                        Respectfully submitted,

                                        MERVYN M. MOSBACKER
                                        United States Attorney

By: _____
                                        JAMES L. TURNER
                                        Assistant United States Attorney
                                        910 Travis St. Suite #1500
                                        P.O. Box 61129
                                        Houston, TX 77208

ClibPDF - www.fastio.com

## CERTIFICATE OF SERVICE

I, James L. Turner, do hereby certify that a copy of the foregoing Respondent's Motion to Dismiss has been mailed on this the 3rd day of November, 2000, via certified mail, return receipt requested to:

Ms. Rosa Meraz, *pro se*
Reg. No. 77413-079
Federal Correctional Institution
Dublin, California 94568

_____
JAMES L. TURNER
Assistant United States Attorney

13